Gaston, Judge.
 

 The principal question presented to our consideration in this case is, whether an executor or administrator can ¡dead in bar of the action of a creditor, that he has not exhibited his demand within the time required by the fourth section of the act of 1789,
 
 (Bee.
 
 ch• 308,
 
 J
 
 without an averment that the defendant has paid over all the assets remaining in his hands to the legatees, or to the next of kin, and has taken from them refunding bonds for the benefit of creditors, as directed by the second section of the same act.
 

 The plaintiff contends for the necessity of this averment, and argues that the second, third, fourth and fifth sections of this act are parts of an entire system devised for the purpose of securing to creditors the satisfaction of their just demands against the estates of deceased persons, and of providing a speedy and safe settlement between the representatives of such estates, and those entitled to the surplus after satisfaction of the creditors. That to carry this system into effectual execution it is indispensable that all the provisions contained in
 
 *452
 
 •these sections shall be construed witli reference to each other, and that it is clearly to be collected from a con- , ,,, . struction thus made, that no protection was intended to be given to an executor or administrator against the demand of a creditor, unless lio liad performed the duty enjoined iu the act of securing for the creditors the means of legal redress against the legatees, or next of kin of the deceased. The court is always solicitous to give to a statute such an interpretation as is best calculated to carry into effect the intention of the Legislature, and for the purpose of ascertaining the intent of any provision in a statute, it will attentively consider every other provision, not only of that statute,but of all the,laws on the same subject. Being declarations of the legislative will in regard to the same matter, the meaning of imperfect or obscure expressions in one part of the law, may he frequently explained by reference to more exact or intelligible expressions in another part. But it is never to be forgotten that the words which profess to declare any
 
 specific purpose
 
 of the law-makers, are the ordinary
 
 signs
 
 by which that purpose is indicated, and that when these are clear and intelligible, it is exceedingly perilous to overrule their import by resorting to words elsewhere used, and bearing directly upon some other, and but indirectly on this specific purpose. The immediate text, if unambiguous, furnishes the surest means of explication, and cannot be controlled by a context not more .certain than itself. Though the whole of the law relates to one subject, yet this subject has its integral parts, and confusion and perplexity must be the unavoidable result of an interference among these parts where a separate action is assigned them. The first section of the act of 1789, is proceeded by a preamble declaring its object to be the cure of those irregularities which had crept into practice, and of those precipitate and injurious decisions in relation to the probate of wills and granting letters of administration, that had arisen from the want of precision in the former laws, which directed the method of proceeding with respect to such probates and grants. In its enactments this section is entirely
 
 *453
 
 confined to the remedy of these evils, and is no further connected with the next, or with any other subsequent sections, than as all of them relate to the estates of deceased persons. The second section is preceded also by its appropriate preamble, from which we collect its purpose to be to speed creditors in the collection of their debts, and to facilitate the settlement of estates by executors or administrators. For this avowed purpose it directs that the executor or administrator, at the end of two years from his qualification, shall deliver over to the legatees, or next of kin entitled to distribution, whatever estate of the deceased may then remain in his hands, after deduction of his necessary charges and disbursements, and such debts as he shall have legally paid, taking bonds from those to whom such delivery over is made, with sufficient sureties, payable to the chairman of the Court and his successors, and conditioned to refund rateably what has been thus received, to the payment of any debt or debts of the deceased, which may be afterwards sued for and recovered, or otherwise duly made to appear ; that these bonds shall enure to the sole use of the creditors, and that they shall have a
 
 save facias
 
 against the obligors
 
 inthe manner
 
 therein after directed. The fourth section has no preamble, and is evidently ancillary to the third, for it simply provides the manner in which this
 
 scire facias
 
 is to be had. It directs that the bonds so taken shall be returned to court, and made a record thereof, and that when an executor or administrator shall plead to the action of any creditor a full administration of the assets, or a want of assets to satisfy his claim, and such plea shall be found true, the creditor may ascertain his demand, and sign judgment, and then sue out a
 
 scire facias
 
 upon these refunding bonds, calling on the obligors to shew cause why execution should not issue against their proper goods and chattels, for the amount of the judgment thus signed, Thus far the system seems sufficiently distinct. The executor or administrator at the end of the two years is to settle with those who may be entitled to the estate, after satisfaction of, or subject to the satisfaction of the
 
 *454
 
 creditors. On doing this he is to take refunding bonds for the benefit of creditors subsequently claiming, which he is to file in Court for their use, and which to that end become records of the Court.' Thus delivering over the assets he may shew a complete administration against any creditor who shall thereafter sue him, and upon his shewing this, the creditor may ascertain his debt, have his judgment therefor, and sue out a
 
 sei.fa.
 
 upon these bonds to collect it. The executor has thus a simple and easy mode pointed out, by which he can settle the estate that has come to his hands, while an expeditious remedy is provided for the creditor against that property which ought to be liable to his demand.
 

 The fourth section is introduced without preamble or recital. It enacts that the creditors of a deceased person residing within the State shall, within two years, and those residing out of the State shall, within three years from the qualification of the executor or administrator, make demand of their respective claims, and “if any creditor shall fail to demand and bring suit for the recovery of his debt, as above specified, within the time limited, he shall be forever debarred from the recovery of his debt in any Court of law and equity, or before any justice of the peace within the State.” It has two
 
 provisos
 
 — the
 
 one
 
 excepting infants,
 
 femes coverts,
 
 &c. from the operation of this bar, provided they bring suit in one year after the removal of their respective disabilities — the other making an exception also for creditors delaying suit at the request of the executor or administrator. The fifth section is as evidently subsidiary to the fourth as the third was to the second. It begins with the preamble “ and in order that all creditors may be
 
 duly
 
 apprised of the death of any person indebted,”— and then proceeds to make it the duty of every executor and administrator upon his qualification, to advertise in the mode therein pointed out, for all persons to bring in their claims agreeably to the foregoing directions. The propriety of considering these two last sections as intimately connected with each other, and as forming together one provision seems to us evident. The first of
 
 *455
 
 them makes the
 
 laches
 
 of a creditor in not preferring his claim within a prescribed time after the qualification of ^jic executor or administrator, a bar to his recovery, -while the other provides that the executor or administrator shall give the creditor public notice of such qualification. There is no such
 
 laches
 
 as the law contemplates, unless there bo the notice which the law requires, and it would be obviously unreasonable for the executor to set up the delay of the creditor as a bar to bis claim, when such delay may have been the consequence of his own omission of duty, in apprising him of the’necessity to make his claim. The executor shhll apprise the creditors of the time within which the claims must be preferred, and doing so he may plead this notification in bar to those creditors who shall' disregard it.
 

 But we perceive no such intimate connection between tliis part of the statute creating a bar against the recovery of the demands of defaulting creditors, and the former part making provision for the satisfaction of creditors who shall make recovery. We can see no cause why either shall be considered as depending upon, or regulating the other, They appear to us to be made
 
 diverso intuitu,
 
 and for different sets of creditors, the former for the benefit of the diligent, the latter for the punishment of the dilatory creditor. He whose claim is not barred, has a right to satisfaction out of the assets of his deceased debtor, against the executor*, if in his hands, or not legally paid over to the legatees, and against the legatees, not the executor, if delivered over to them in the manner prescribed by the act. He whose claim is barred by his own default* has lost all right to satisfaction from these assets, whether in the hands of the executor, or lawfully delivered over to the legatees. To free the executor from
 
 personal
 
 liability to the former, it is enough to shew that the assets have been delivered over, and refunding bonds taken. To
 
 bar the action
 
 of the latter it would seem to be sufficient to establish the
 
 laches
 
 which creates the bar. The successful creditor has no interest in the enquiry, whether
 
 *456
 
 proper advertisement has been made to protect the estate against defaulting creditors, and the defaulting creditor has no interest in knowing whether adequate provision has been made for those who are not in default. The/onncr cannot object to a piea of a proper administration of the assets, because advertisement has not been made for creditors to prefer their claims in due season, and the latter it would seem can as little object to the plea in bar, that refunding bonds had not been taken for those who arc not barred.
 

 It is insisted however on the part of the plaintiff, that the executor or administrator is not bound to deliver over tiie remaining assets in his hands, until the expiration of two years from the time of his qualification — that the same period is prescribed for the- creditors within which to prefer their claims — that the bonds are to be for the benefit of the creditors who shall thereafter bring suits and recover, or whose debt shall be thereafter duly made to appear; and that these provisions shew that the bar spoken of in the fourth section is not properly a bar • to the action of the plaintiff, but a personal defence to the executor or administrator. The language used by the legislature in declaring the effect of non-claim by the creditor, scarcely leaves room for construction. It is, “ that such creditor shall be forever debarred from the
 
 recovery of Ms debt
 
 in any court of law or equity.”
 

 It is scarcely possible to suppose that such terms could have been employed for the'purposo of protecting an executor against personal liability wiio had faithfully administered the assets, and who by force of such administration was adequately protected, and therefore stood in no need of this additional shield. An exposition so inconsistent with the obvious import of the words employed, and leading to a result so nugatory, cannot be admitted unless it be supported by irresistible argument. Is that, which we are considering of this character? Two years is indeed the period at which the Legislature directs the representative of the deceased person, to deliver over to tiiose entitled under his will, or by the law, whatever remains of the estate, after payment of the debts which
 
 *457
 
 i)ave {jeen ,]a]y demanded; and the same period is assigned for the creditors — inhabitants of the State, to make such demand. But infants, insane persons, ana
 
 femes covert
 
 are at liberty to prefer their demands after this period, and until the end of one year from the termination of their disabilities. Persons without the State, though under ’no disability, have three years within which to• claim and sue. The Legislature directs the executor and administrator to settle with those whose claims are next in order to the demands of creditors, at the time when in general these may, and ought to be satisfied. It protects him in doing so against such as may nevertheless be legally exhibited afterwards, while it secures to the creditors the means of payment, by requiring refunding bonds to be taken, and recorded for their benefit, it is well known that great doubts were once entertained by the profession, whether this fourth section of the act of 1789, did not constructively operate a repeal of the seventh section-of the act of 1715,
 
 (Rev. eh.
 
 10,) which forever barred nit creditors of a deceased person, whether under disability or not under disability, whether bringing suit against the personal representatives, or against the heirs of t.he deceased, and whether advertisement had, or had not been published, by a failure to make claim for seven years after the death of the debt; or. The -Federal Circuit Court of this district, and the Supreme Court of the United States held, that the act of 1789, did repeal the act of 1715, while the courts of this State held that both might, and did stand in force. During this controversy which so perplexed the profession, and divided the tribunals of justice, this exposition of the fourth section shewing that in truth it created no
 
 lav
 
 to the creditor, but only gave a
 
 personal
 
 protection to the executor, that it prescribed no limitation to the action, but regulated the administration of the assets, was never urged, or as we believe, thought of. Had it been admitted to be correct, all pretence for a conflict between the acts would have been at an end. The old act would not only have been reconcilable with the new, but could not have been regarded as within the purview of the new act. The two acts would be then distinct actions of'
 
 *458
 
 legislative will upon different
 
 cases
 
 — the one barring the creditor not claiming within seven years, the other sc, curing to him so claiming an appropriate remedy.
 

 Advertisements theact^isoe, establishing Su-gaclT county, to be. at the houses, may now be ma(Je at the h¡ouse& ^onrt
 

 We concur therefore in the opinion of the judge who presided on the trial of this cause in the Superior Court that it was not necessary for the defendant to aver in bis plea, and of course not necessary for him to prove on the trial, that he had delivered over the assets to the next of kin, and taken refunding bonds.
 

 Two other exceptions were taken by the plaintiff to the charge of the judge, and have been here assigned as errors. The last section of the act of 178&, requires besides other notice for the creditors to bring in their <le-mands within the prescribed time,
 
 “to
 
 advertise at the district court-house, at the next district superior court of law and equity, held for the district in which such county
 
 may
 
 be.” The judge determined that since the act of 1806, which substituted Superior courts of law and equity, for each county, in the lieu and stead of Superior courts for large districts,embracing several counties, an advertisement at the court-house of the county, at the next Superior court of law and equity for that coun ty, was a compliance with this requisition. We see no ground for exception to tins instruction. The district Superior court contemplated by the act, was that district Superior court which then existed. If a later law has abolished the courts at which the advertisement by an cider law was required to be made, so as to render a compliance with that injunction
 
 impossible,
 
 this change of legislation removes the injunction. When the law imposes a duty, the citizen must obey — when a subsequent law renders the performance of this duty impossible, the Legislature releases the obligation.
 
 Lex ne-minem cogit ad impossibilia.
 
 The court however adopts the construction of the Judge below',that the effect of the general substitution by the Legist ature, of County Supe- . rior courts, for district Superior courts, is to render the former the appropriate place for performing acts which wore theretofore required to be done at the.latter.
 

 The remaining exception is to that part of the Judge’s
 
 *459
 
 instruction which left it to tiic jury to decide upon the evidence of an advertisement ¡it the Superior court, after the qualification of the defendant. The term of thin co,u-t was on the first week after the fourth Monday of March 1824. The testimony offered was that of a witness, wdio declared that some time before Christmas 1823, he saw the advertisement at the court-house.— ’■jppjg testimony seerms to us so slight, that unsupported by any other circumstances, we should have little hesitation in pronouncing it insufficient to warrant the conclusion of fact which the jury have draw n, were this a tribunal that had a right to set aside verdicts, because-of a finding on insufficient proof. But this jurisdiction is exclusively given to the court below. No application can be made here for a new trial because of a verdict there a-gainfjt evidence,or without evidence, hut solely for misdirection on a question oi’law. No specific instruction was prayed for on the subject of the admissibility, or of the effect of this evidence. To reverse the judgment we must see an error in law. The advertisement at the court-hpuse,
 
 four
 
 months before the Superior court, was perhaps
 
 some
 
 evidence of an advertisement there at the court. It was evidence or not, and if evidence, weaker or stronger according to circumstances with which the jury was familiar, and which were no doubt known to
 
 all
 
 at the trial, but are not stated in the record — that is to say, accordingly as the advertisement was slightly or strongly attached to the court-house, was on the inside, or external wall of the building, whether the courthouse was in a town, or in a thin neighborhood, was well or ill secured, or was much or little frequented in the vacations between the terms of the courts. Upon the whole, we do not feel ourselves authorised to say that there ivas
 
 no
 
 evidence to be left to the jury respecting the fact of an advertisement at the Superior court.— This exception therefore is also overruled.
 

 The Supreme Court cannot set &side a verdict, although in their opinion found up. oil slight testimony’
 

 As no sufficient reason has been shewn for reversing the judgment rendered below in favor of the defendant, we arc of opinion that it should bo affirmed with costs,
 

 Pee Curiam. — Judgment arrirmed.